1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| CHANDRA DIXON, | ) | Case No.: 12-cv-02333-PSG |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING PLAINTIFF's** |
| v. | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT AND GRANTING** |
| DAVID J. ASTRUE, Commissioner of Social | ) | **DEFENDANT's MOTION FOR** |
| Security | ) | **SUMMARY JUDGMENT** |
| | ) | |
| Defendant. | ) | **(Re: Docket Nos. 20, 23)** |
| | ) | |

Plaintiff Chandra Dixon ("Dixon") filed this action on November 20, 2012. She appeals the decision by David J. Astrue, Commissioner of Social Security ("Commissioner"), denying her disability insurance benefits.[1] Dixon moves for summary judgment. The Commissioner opposes the motion and cross-moves for summary judgment. Having reviewed the papers and considered the arguments of counsel, the court DENIES Dixon's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

---

[1] The challenged decision was rendered by Administrative Law Judge Brenton L. Rogozen (the "ALJ") on September 13, 2010. The ALJ's decision became final on March 15, 2012, when the Appeals Council of the Social Security Administration denied Dixon's request for administrative review of the decision.

Case No.: 12-cv-02333 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

# I.   BACKGROUND

The following facts are taken from the September 13, 2010 decision by the ALJ and the accompanying administrative record ("AR").  Dixon was born March 26, 1974.[2]  Throughout her education, she has attended special education classes or qualified as a disabled student.[3]  As of 2007, she had completed three years of community college.[4]  She worked as a bouncer at a bar and a landscaper in 1996, a chimney sweeper in 1999, a cook in 1998, a customer service employee for a food delivery service in 2000, and again as a cook in 2003.[5]  Dixon ceased working in December of 2003 due to her medical conditions, which she alleges began when she was three years old.[6]  On September 12, 2008, she filed her current SSI application claiming she could not work due to severe, disabling PTSD; high blood pressure; epilepsy; vertigo; left wrist, elbow, and knee pain; fractures/compression fracture of the neck with pinched nerves and numbness in the hands, arms, and legs; sleep apnea; learning disabilities; and blood clots in her left arm.[7]  Dixon is roughly 6'1'' and her weight varies between 280-300 pounds.[8]

## A.   Medical Evidence

Dixon visited Dr. Stephen J. Halpern ("Halpern"), her treating physician, twice in 2007.[9] On March 22, 2007, Halpern completed a form document, indicating that Dixon had a chronic

---

[2] *See* AR at 90.

[3] *See id.* at 121.

[4] *See id.*

[5] *See id.* at 114.

[6] *See id.* at 113.

[7] *See id.* at 116-20.

[8] *See id.* at 765, 961, 972, 974.  Dixon's height has been conflictingly reported as 6'1'' and 5'11''.

[9] *See id.* at 882-83, 889-91.

2

condition that prevented her from working.[10]  Specifically, she was limited to standing or walking

2-4 hours per day and sitting a total of 4-6 hours per day.[11]  She could lift up to 20 pounds

occasionally; climb, stoop, kneel, crouch, or crawl occasionally; and only occasionally reach below

her knees, from the knees to the waist, and above her shoulders.[12]  Halpern also noted that Dixon

was restricted in using her hand and finger for repetitive motions due to a "right elbow and wrist

injury" and was restricted from using foot controls due to "foot/leg cramping."[13]  It was also his

opinion that heat caused fatigue, cold caused pain, and that "medications cause[d] drowsiness,

vertigo, and memory loss."[14]  Dixon visited Halpern again on August 30, 2007, where he made

substantially the same findings, with the exception that he found no restriction in hand/finger

movement and that she had no ability at all to climb, stoop, kneel, crouch, or crawl.[15]  He also

noted that "heat increases possible seizures and vertigo."[16]

     In 2008, Dixon filed for disability benefits.[17]  As part of the disability determination

process, she was examined by a psychologist, Dr. Robert M. Sayad ("Sayad").  Sayad reported that

although Dixon presented with a history of learning disabilities, there was no indication of a

developmental disability.[18]  Dixon told Sayad that she had been assaulted two years earlier, when

---

[10] *See id.* at 889-91.

[11] *See id.*

[12] *See id.*

[13] *See id.*

[14] *See id.*

[15] *See id.* at 882-83.

[16] *See id.*

[17] *See id.* at 984-86.

[18] *See id.* at 769.

Case No.: 12-cv-02333 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

she was hit on the head with a bat and raped.[19]  Sayad also stated that because there were no corroborative records available for review, with which he could place the test results in context, he could not assess the relative impact of Dixon's disabilities and medical conditions on the test results.[20]  Dixon scored "58" on her IQ test; however, due to Dixon failing both malingering tests, Sayad opined that the "test data appear[ed] to be of questionable validity and should be interpreted with caution and corroborated by outside sources of information."[21]  Sayad concluded that from a strictly mental ability standpoint, "she wouldn't appear to be precluded from performing simple and repetitive tasks."[22]

In December 2008, the Social Security Administration's psychologist Dr. Mark Stevenson ("Stevenson") reviewed the record and completed a mental RFC assessment.[23]  He found that Dixon was "moderately limited" in her ability to understand and carry out detailed instructions, complete a normal workday without interruptions from psychologically based symptoms, interact appropriately with the general public, and respond appropriately to changes in the work setting.[24]  Stevenson concluded that she would be capable of meeting basic cognitive/emotional demands of simple/unskilled work.[25]

---

[19] See id.

[20] See id.

[21] See id.

[22] See id.

[23] See id. at 785-87.

[24] See id.

[25] See id. at 787.

Case No.: 12-cv-02333 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

In December 2008, Dixon was examined by Dr. Clark E. Gable ("Gable").[26]  He found that Dixon was taking medication for sleep and anxiety, but nothing that would be used to treat PTSD.[27]  Gable also opined that he did not find Dixon to be a credible historian and did not think it was possible to examine her and make any proper disposition.[28]  He re-examined her in January 2010 and re-stated his earlier opinions regarding her credibility.[29]  He also stated that the examination was characterized by a multitude of complaints, "almost too numerous to name."[30]  Gable's conclusion was that Dixon could sit up to 6 hours with usual breaks and that if she weren't deconditioned, she could probably stand and walk up to 6 hours.[31]  Gable found she could lift 10 pounds frequently and 20 pounds occasionally and found no problems with fine finger and hand movements.[32]

In April 2009, the Social Security Administration's doctor, Dr. S. Bussey ("Bussey"), reviewed the record.[33]  He found that Dixon was capable of standing, walking, and sitting for up to 6 hours per day.[34]  He noted that current evidence showed Dixon had been hospitalized in October 2008, when she underwent lysis of adhesions with ovarian cystectomy.[35]  Bussey also noted that

---

[26] *See id.* at 791.

[27] *See id.* at 789.

[28] *See id.* at 791.

[29] *See id.* at 960, 962.

[30] *See id.* at 960.

[31] *See id.* at 962.

[32] *See id.*

[33] *See id.* at 956-59.

[34] *See id.* at 956.

[35] *See id.*

5

Case No.: 12-cv-02333 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Dixon was undergoing physical therapy to increase mobility and the most recent notes indicated she was able to walk with a cane.[36]

After her application was denied, Dixon filed a Request for Reconsideration, adding that: her PTSD had worsened; she was experiencing more seizures and abdominal pain; she was worried about stroke and edema; her pain and hypertension were uncontrolled; and she had become "housebound."[37]  The request was again denied.[38]  Dixon then requested a hearing to review the determination.[39]

**B.      Hearing**

The Administrative Law Jude ("ALJ") held a hearing on July 9, 2010, where Dixon appeared with her attorney, Robert Taren.[40]  Dixon testified that she was 34 years old; graduated from high school with some college; had past work as a cook, gardener, and construction laborer; and last worked in 2004.[41]  She explained that she was still having problems with her stomach due to ovarian surgery in June 2009.[42]  She stated that she had been prescribed a walker in 2009 because she was considered a fall risk, and estimated that she could stand comfortably about 15

---

[36] *See id.*

[37] *See id.* at 181.

[38] *See id.* at 978-82.

[39] *See id.* at 73.

[40] *See id.* at 990-1015.

[41] *See id.* at 993-95.

[42] *See id.* at 997-98.

Case No.: 12-cv-02333 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

minutes.[43]  With respect to sitting, she explained that she could sit for about 15 minutes before

having to readjust her body.[44]

Dixon also testified that she was hit in the head with a bat in an assault in 2006, causing her

amnesia and concentration problems.[45]  She explained that these problems, combined with 6-7

petite mal seizures and 1 grand mal seizure per month forced her to drop out of classes.[46]  Her

mother, Mavis Drake, also testified that she had witnessed her daughter experience at least two

grand mal seizures in the past year, although she could not provide the ALJ with specific details

relating to the seizures.[47]

## C.    ALJ's Findings

On September 13, 2010, the ALJ issued his decision denying Dixon's claim.  As a

preliminary matter, the ALJ noted that the claimant's new medical evidence regarding her left knee

pathology and obesity was sufficient to rebut the presumption of continuing "non-disability"

arising from the date of the previous unfavorable hearing decision.

For the first step of the disability analysis, the ALJ found Dixon had not been engaged in

substantial gainful activity since August 28, 2008, the application date.[48]  At step two, he found

that Dixon had a medically determinable and severe impairment, under 20 C.F.R. 416.920(c), of

seizures by history and minor osteoarthritis in the left knee combined with obesity.  At step three,

the ALJ found that Dixon's impairments did not meet or medically equal one of the listed

---

[43] *See id.* at 998.

[44] *See id.* at 1000.

[45] *See id.* at 1004.

[46] *See id.* at 1002-03.

[47] *See id.* at 1008-10.

[48] *See id.* at 23.

7

Case No.: 12-cv-02333 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

impairments.[49]  At step four, he determined Dixon to be incapable of performing any past relevant work.[50]  He based this determination on his finding that Dixon had the residual functional capacity ("RFC") to perform essentially a full range of "sedentary" work.[51]  At step five, the ALJ found that, considering Dixon's age, education, and work experience, "there are jobs that exist in significant numbers in the national economy that the claimant can perform."[52]

The ALJ offered several grounds for his determination.  Although he noted that Dixon alleged many subjective complaints, he stated that "subjective complaints are considered credible only to the extent that they are supported by the overall objective documentary medical evidence of record,"[53] and here, there was a "profound lack of supportive medical evidence."[54]  He acknowledged that the record showed a medical history of epilepsy since a young age, but noted that all brain MRI's, CT-scans, and EEG's had been normal and there were notes of accompanying alcohol use and medical non-compliance.[55]  He pointed to multiple instances between 2004 and 2006 when Dixon had complained of pain or injury that could not be explained by X-rays.[56]

---

[49] *See id.* at 25.

[50] *See id.* at 28.

[51] *See id.* at 25.

[52] *See id.* at 29.

[53] *See id.* at 28.

[54] *See id.* at 24.

[55] *See id.*

[56] *See id.*  In 2004, Dixon complained of pain in her left shoulder, wrist, elbow, and right hand, but all these X-rays were negative or normal.  In 2006, she reported elbow, knee, and shoulder pain, but all these X-rays remained negative.  In June 2007, she reported a left knee injury, but the X-ray was negative for fracture.  "However, a follow-up in August 24, 2007 X-ray did show 'slight' narrowing of the medical joint compartment with 'tiny' effusion in the left knee."

Case No.: 12-cv-02333 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Regarding any alleged mental limitations, including PTSD, the ALJ was dissuaded by the lack of evidence showing any actual psychotherapy or counseling sessions.[57]  He also rejected Dixon's IQ score of "58," which is in the range of mental retardation, and cited Sayad's opinion questioning the validity of the assessment of Dixon's functional capabilities.[58]  As to Dixon's claim of a history of epilepsy, the ALJ stated, "the claimant can allege that she has 7 grand mal seizures recently, or 700, but if the record fails to document these objectively, the undersigned cannot make an objective finding that the claimant's epilepsy produces . . . symptoms as alleged."[59]  He found allegations such as having had vertigo for 11 years, or severe migraine headaches, or blurry vision, questionable in light of the lack of supportive medical signs and her ability to take public transportation, attend junior college, and take care of a teenage son.[60]  In referencing the overall lack of objective medical evidence, the ALJ concluded that it only served "to underscore just how strongly the consultative physicians in the record suspected the claimant of malingering."[61]

Having summarized various medical opinions in the record, the ALJ concluded that even "with the intention of giving [Dixon] all reasonable benefit of the doubt concerning her need to use an assistive device following her October 2008 ovarian surgery, along with the minor MRI findings of osteoarthritis in combination with her obesity," none of the medical opinions precluded Dixon from performing at least "sedentary" work, with minor requirements for standing or walking.[62]

---

[57] *See id.* at 27.

[58] *See id.* at 24-25.

[59] *See id* at 28.

[60] *See id.*

[61] *See id.*

[62] *See id.* at 26.

9

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

While the ALJ did consider a series of lay third party statements on the record, including statements from the Cabrillo College Disabled Students Program and Dixon's mother, he noted that "the claimant's mother very nearly duplicates one response to a question about chores . . . suggesting the possibility that the claimant's mother may have been copying the answers supplied by the claimant."[63]  In reaching his final decision, the ALJ "accorded much more weight to the medical opinions and assessments submitted by the examining and evaluating physicians and clinicians in the record."[64]

In determining that Dixon was unable to perform any past relevant work, the ALJ referenced the <u>Dictionary of Occupational Titles</u>.[65]  He cited the Medical Vocational Guidelines in stating that considering Dixon's "age, education, work experience, and residual functional capacity," jobs did exist in significant numbers in the national economy that the claimant was capable of performing.[66]

Dixon requests that the court reverse the ALJ's decision and remand the case to the SSA for an award of benefits.  Alternatively, Dixon requests that the case be remanded for further administrative proceedings to determine whether she is disabled.  The Commissioner in turn asks that the ALJ's final decision be affirmed.

## II.   LEGAL STANDARDS

**A.     Standard for Reviewing the Commissioner's Decision**

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision denying Dixon benefits. The Commissioner's decision (here the underlying decision of

---

[63] *See id.* at 28.

[64] *See id.*

[65] *See id.*

[66] *See id.* at 29.

10

Case No.: 12-cv-02333 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon

2  the application of improper legal standards.[67]  In this context, the term "substantial evidence"

3  means "more than a scintilla but less than a preponderance – it is such relevant evidence a

4  reasonable mind might accept as adequate to support the conclusion."[68]  When determining

5  whether substantial evidence exists to support the administrative record as a whole, the court must

6  consider adverse as well as supporting evidence.[69]  Where evidence exists to support more than one

7  rational interpretation, the court must defer to the decision of the ALJ.[70]  "If additional proceedings

8  can remedy defects in the original administrative proceedings, a social security case should be

9  remanded."[71]

10

11  **B.      Standard for Determining Disability**

12          Disability claims are evaluated using a five-step, sequential process.  In the first step, the

13  Commissioner must determine whether the claimant currently is engaged in substantial gainful

14  activity; if so, the claimant is not disabled and the claim is denied.[72]  If the claimant is not currently

15  engaged in substantial gainful activity, the second step requires the Commissioner to determine

16  whether the claimant has a "severe" impairment or combination of impairments that significantly

17  limits the claimant's ability to do basic work activities; if not, a finding of "not disabled" is made

18

19

20

21  _____

    [67] *See Moncada v. Chater,* 6 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan,* 966 F.2d 1255,
22  1257 (9th Cir. 1992).

23  [68] *See Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1257.

24  [69] *See Drouin,* 966 F.2d at 1257; *Hammock v. Bowen,* 879 F.2d 498, 501(9th Cir. 1989).

25  [70] *See Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1258.

26  [71] *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

27  [72] *See id.*

28                                                11

and the claim is denied.[73]  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing; if so, disability is conclusively presumed and benefits are awarded.[74]  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the  claimant has sufficient "residual functional capacity"[75] to perform his or her past work; if so, the claimant is not disabled and the claim is denied.[76]  The plaintiff has the burden of proving that he or she is unable to perform past relevant work.[77]  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant can perform other substantial gainful work;[78] the determination of this issue comprises the fifth and final step in the sequential analysis.

## III.   DISCUSSION

**A.      The ALJ Did Not Err in Concluding That Dixon's PTSD Was Not a Severe Impairment**

Dixon first argues that the ALJ erred in failing to find Dixon's PTSD was a severe mental impairment.  In his opinion, the ALJ found that there was a profound lack of supportive medical

---

[73] *See id.*

[74] *See id.*

[75] A claimant's RFC is what he or she can still do despite existing exertional and non-exertional limitations. *See Cooper v. Sullivan,* 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[76] *See Drouin,* 966 F.2d at 1257; *Gallant v. Heckler,* 753 F.2d 1450, 1452 (9th Cir. 1984).

[77] *See id.*

[78] There are two ways for the Commissioner to meet the burden of showing that there is work in significant numbers in the national economy that claimant can do: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines. *See Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999).

12

Case No.: 12-cv-02333 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

evidence for PTSD, with neither psychotherapy or treatment, nor even medication being utilized.[79]

An impairment is non-severe if it "does not significantly limit [a claimant's] physical or mental ability to do basic work activities.[80]  Basic work activities in turn are defined as "abilities and aptitudes necessary to do most jobs" including "[u]nderstanding, carrying out, and remembering simple instruction," "responding appropriately to supervision, co-workers and usual work situations" and dealing with changes in a routine work setting.[81]

Dixon contends that the ALJ did not give adequate weight to the physicians' opinions diagnosing her with PTSD.  Diagnoses alone, however, without a finding that the impairment significantly limits a claimant's physical or mental ability to do basic work activities, is insufficient to support a finding of severe impairment.[82]  Although Sayad and Gable listed PTSD as an "impression" during their examinations, their conclusions were both qualified by additional statements.[83]  Sayad merely referred to Dixon's "allegation[s] of PTSD," but did not actually diagnose Dixon with PTSD.[84]  Moreover, in his conclusion, he stated that "from a strictly mental ability standpoint, she would not appear to be precluded from performing simple and repetitive tasks."[85]  Gable also based his finding of severe PTSD on her alleged history, prefacing his conclusion with the statement, "I don't believe the claimant is a credible historian."[86]  He made no

---

[79] *See* AR at 25-27.

[80] 20 C.F.R. §§ 404.1521(a), 416.921(a).

[81] 20 C.F.R. § 404.1521(b).

[82] 20 C.F.R. § 416.920(a).

[83] *See* AR at 24.

[84] *See id.* at 768-69.

[85] *See id.*

[86] *See id.* at 960.

13

Case No.: 12-cv-02333 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    opinion on how she might be limited mentally in everyday activities.  At the same time, he opined

2    that from a functional point of view, Dixon could sit up to six hours per day, lift ten pounds

3    frequently, and move her fingers and hands without any problems.[87]

4        Dixon also argues that the ALJ did not give proper weight to Stevenson's non-examining

5    psychiatric opinion.[88]  An ALJ is not required to discuss every piece of evidence, especially that

6    which is neither significant nor probative.[89]  Stevenson's check-box report was not probative

7    evidence, and the ALJ did not err in choosing to not discuss the report.  Moreover, while Stevenson

8    opined in the report that Dixon was moderately limited in a few areas, he concluded that the

9    claimant was "capable of meeting the basic cognitive/emotional demands of simple/unskilled work

10   on a competitive, sustained basis."[90]  This is consistent with the rest of the record and runs contrary

11   to Dixon's assertion that due to her PTSD, she was unable to perform basic work activities.

12       Dixon further argues that the ALJ erred in relying on her lack of medical treatment in

13   finding her alleged PTSD condition was not severe.[91]  The Ninth Circuit has held, however, that

14   the ALJ may consider unexplained or inadequately explained failures to seek treatment, including

15   where there was no medical evidence that claimant's resistance was attributable to her mental

16   impairment rather than her own personal preference.[92]  The court found it reasonable for the ALJ to

---

[87] *See id.* at 962.

[88] *See* Docket No. 20 at 11-12.

[89] *See Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

[90] *See* AR at 787.

[91] *See* Docket No. 20 at 12.

[92] *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012).

14

1      conclude that the level or frequency of treatment was inconsistent with the level of the

2      complaints.[93]

3              Dixon notes that her diazepam (Valium) was prescribed for her anxiety and PTSD;[94]

4      however, there are no medical records or documents from her prescribing physician, Halpern, to

5      corroborate the purpose of the medications.  Dixon points to the National Institute of Health, which

6      notes different medications that may be used for PTSD and includes anti-anxiety medications, such

7      as diazepam.[95]  While this may be true, there is still no evidence or opinion by Halpern of any

8      functional limitations attributed to Dixon's PTSD.  Gable also expressed that the medications

9      Dixon took, such as Valium, were "apparently for sleep and anxiety, but nothing . . . that one

10     would use for PTSD."[96]  Dixon was also not receiving any other form of treatment, such as

11     psychotherapy or counseling.

12             Because the ALJ may consider unexplained failures to seek treatment, the court finds that

13     there was substantial evidence to support the ALJ's finding that the lack of treatment was

14     inconsistent with the severity of Dixon's subjective complaints. Dixon cites *Nguyen v. Chater*,

15     where the Ninth Circuit criticized the use of lack of treatment to reject mental complaints.[97]

16     However, in that case, the court found strong corroborating evidence from a treating

17     psychologist.[98]  In Dixon's case, there is no such evidence from any treating or examining

18     psychologist that her failure to obtain treatment was a result of her alleged PTSD.

---

[93] *See Molina*, 674 F.3d at 1112.

[94] *See id.* at 184.

[95] *See* Docket No. 20 at 11.

[96] *See id.* at 25, 789.

[97] 100 F.3d 1462, 1465 (9th Cir. 1996).

[98] *See id.*

15

**United States District Court**
For the Northern District of California

As noted above, the ALJ's determination that the claimant's PTSD was non-severe and did not affect her daily activities was supported by substantial evidence. But even if the ALJ erred in his decision, the error would have been harmless. Severity is a threshold inquiry designed to ferret out meritless claims.[99] Dixon was able to move forward in the analysis of her claim by virtue of a different severe impairment, obesity in combination with her osteoarthritis.[100] Throughout the remaining steps, the ALJ must consider the "combined effect" of all the claimant's impairments on her RFC, without regard to whether any such impairment, if considered separately, would be of sufficient severity.[101] The ALJ discussed claimant's PTSD at step four of the analysis, in determining her RFC.[102] Dixon has not proven that the ALJ's decision, if in error, would necessarily have altered the final outcome of the disability determination.

**B.    The ALJ Did Not Err in Considering the Opinion of a Treating Physician**

Dixon argues that the ALJ failed to acknowledge Halpern's opinion that Dixon had a chronic condition which prevented her from working.[103] The Commissioner contends that the ALJ reasonably "accepted Dr. Halpern's medical opinion that Plaintiff was limited to sedentary work, and properly rejected his non-medical opinion that Plaintiff was unable to work."[104]

Courts generally afford greater weight to an opinion of a treating physician like Halpern; however, it is "not necessarily conclusive as to either a physical condition or the ultimate issue of

---

[99] *See Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) ("the step-two determination of whether a disability is severe is merely a threshold determination").

[100] *See* AR at 24.

[101] 20 C.F.R. § 416.923; *Howard v. Barnhard*, 341 F.3d 1006, 1012 (9th Cir. 2003).

[102] *See* AR at 27-28.

[103] *See* Docket No. 20 at 14.

[104] *See* Docket No. 23 at 10.

16

Case No.: 12-cv-02333 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

disability."[105]  "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted."[106]  He or she must only present specific and legitimate reasons for doing so.[107]

Here, the ALJ evaluated Halpern's report, which indicated that Dixon was capable of standing/walking for 2-4 hours per day, sitting for 4-6 hours per day with breaks, using her hands/fingers for repetitive motions with no restrictions, and lifting up to 20 pounds frequently.[108] The ALJ noted this report in stating that for six months in 2007, Halpern submitted a series of approximately "sedentary" assessments.[109]  Although the ALJ observed that other physicians had made "light" RFC assessments during the same time, with the intention of giving all reasonable benefit of the doubt, the ALJ accepted Halpern's factual assessment of "sedentary" RFC for the claimant.[110]

Halpern's check-box report further described Dixon as having a chronic condition which prevented her from working, but provided no specific reasons for this conclusion.[111]  Check box reports that provide little explanation or reasoning behind their conclusions are generally afforded little weight.[112]  Here, the ALJ discounted this portion of the report because it was conclusory and was supported by little analysis.   "[T]he ALJ need not accept a treating physician's opinion which

---

[105] *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

[106] *See id.* (citing *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

[107] *See id.*

[108] *See id.* at 882-83.

[109] *See id.* at 26.

[110] *See id.* at 26-27.

[111] *See id.* at 884.

[112] *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that an ALJ permissibly rejected check box reports that did not contain any explanation of the bases of their conclusions).

Case No.: 12-cv-02333 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   is 'brief and conclusionary in form with little in the way of clinical findings to support [its]

2   conclusion.'"[113]   Additionally, the report was not based on a current treating relationship with

3   Dixon and the doctor's treatment of her had been administered a year before she filed her current

4   application.[114]   By articulating legitimate reasons for his decision, the ALJ properly discounted this

5   portion of Halpern's report.

6          Dixon also contends that the ALJ did not fully develop the record by asking for an updated

7   report from Halpern.[115]   The Commissioner responds that no such duty was triggered.[116]   "In Social

8   Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that

9   the claimant's interests are considered."[117]   "Ambiguous evidence or the ALJ's own finding that

10  the record is inadequate to allow for proper evaluation of the evidence triggers the ALJ's duty to

11  conduct an appropriate inquiry."[118]   If the ALJ believes that he needs to know the basis of a

12  doctor's opinion in order to evaluate it, he has a duty to develop the record, for example, by

13  subpoenaing the physicians or submitting further questions to them.[119]

14

15         In his report, the ALJ commented that he did "not understand why counsel could not have

16  requested that Dr. Halpern, who . . . is still treating the claimant, submit an RFC representing the

17  period since the claimant filed her current SSI application."[120]   However, the ALJ did not make a

18

19

20  ---

21  [113] *See id.* (quoting *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986)).

22  [114] *See* AR at 26.

23  [115] *See* Docket No. 20 at 14.

24  [116] *See* Docket No. 23 at 12.

25  [117] *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

26  [118] *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

27  [119] *See Smolen*, 80 F.3d at 1288.

28  [120] *See* AR at 26.

Case No.: 12-cv-02333 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*United States District Court*
*For the Northern District of California*

finding that the report was ambiguous or inadequate to make a determination regarding Dixon's disability.  As noted previously, the ALJ did consider some portions of Halpern's report, which provided details as to the exact physical functional capacity of the complainant.[121]  Despite the fact that the report was made in 2007, the ALJ resolved any ambiguity in favor of the complainant,[122] and gave Dixon the benefit of the doubt in adopting a "sedentary" RFC.[123]  As there was no ambiguity in Halpern's report that was relied upon by the ALJ, the ALJ was under no obligation to further develop the record.

**C.     The ALJ Did Not Err in Evaluating Complainant's Obesity Under SSR 02-01p.**

Dixon asserts that the ALJ failed to "evaluate the impact of [her obesity] on her ability to function in a sustained manner."[124]  The Commissioner responds that Dixon's claim is without merit, as the ALJ found that a combination of obesity and osteoarthritis was a severe impairment, considered the potential effects of her obesity on other impairments, and assessed a greatly reduced RFC for sedentary work with postural limitations.[125]

"An ALJ must consider obesity 'as a factor contributing to [the claimant's] disability.'"[126] "'Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment,'" and the ALJ will evaluate each case based on the case record.[127]  "As with other impairments, the ALJ should explain how he determined whether

---

[121] *See id.* at 882-83.

[122] *See id.* at 26-27.

[123] *See id.*

[124] *See* Docket No. 20 at 15.

[125] *See* Docket No. 23 at 12-13.

[126] *Davis v. Astrue*, No. 11-1819, 2012 WL 3011223 at *12 (N.D. Cal. July 23, 2012).

[127] *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (quoting SSR 02-01p (2002)).

Case No.: 12-cv-02333 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

obesity caused any physical or mental impairment."[128]  In determining the RFC, "the ALJ's assessment 'must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'"[129]

While Dixon points to her weight and BMI measurements, she fails to point to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis at any stage.[130]  It is clear from the record that at step two, the ALJ found that Dixon's obesity, when combined with minor osteoarthritis of the left knee, was a severe impairment.[131]  Throughout his analysis, the ALJ acknowledged doctors' notes that the claimant was obese and had presented between 280 and 300 pounds from 2008-2010.[132]  When determining RFC in step four, the ALJ accepted a "sedentary" RFC which he specifically attributed to her obesity, in combination with minor osteoarthritis, and her alleged need to use an assistive device.[133]  The ALJ reviewed the doctors' opinions reporting Dixon's weight and noted that none contradicted even a "light" RFC assessment for an ordinary work day.[134]  Halpern, her treating physician, indicated that Dixon was capable of standing/walking for 2-4 hours per day, sitting for 4-6 hours per day with breaks, using her hands/fingers for repetitive motions with no restrictions, and lifting up to 20 pounds

---

[128] *Davis*, 2012 WL 3011223 at *12.

[129] *Burch*, 400 F.3d at 683 (quoting SSR 02-01p (2002)).

[130] *See* Docket No. 20 at 15.

[131] *See* AR at 24.

[132] *See id.* at 24-26.

[133] *See id.* at 25-26.

[134] *See id.* at 26.

20

Case No.: 12-cv-02333 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

occasionally.[135]  There is no evidence that the ALJ failed to consider any functional limitations as a result of her obesity.

**D.      The ALJ Did Not Err in Applying the GRIDS**

Dixon contends that because she has many impairments that are non-exertional, application of the Commissioner's Medical-Vocational Guidelines ("GRIDS") in any manner was inappropriate, and the ALJ should have consulted a vocational expert testimony in determining her ability to perform other work.[136]  In listing her non-exertional impairments, she includes "chronic pain, fatigue, postural imitations, lift/carry limitations, impaired sleep," and the conclusions listed in Stevenson's report regarding her ability to function in a normal workday.[137]  In contrast, the Commissioner asserts that "[b]ecause the ALJ properly discounted Plaintiff's credibility and properly assessed the opinion evidence" regarding her non-exertional impairments, the ALJ properly relied on GRIDS and was not required to seek vocational expert testimony.[138]

The GRIDS use age, education, previous work experience, and RFC to determine whether or not a complainant is disabled or not disabled, without the testimony of vocational experts.[139] The GRIDS categorize jobs by three physical "exertional" levels, consisting of sedentary, light, and medium work.[140]  It then directs a finding of disabled or not disabled based on the number of jobs in the economy in the appropriate exertional category.[141]  In determining the last step of the

---

[135] *See id.* at 882-83.

[136] *See* Docket No. 20 at 16-17.

[137] *Id.*

[138] *See* Docket No. 23 at 13-14.

[139] *See Cooper v. Sullivan*, 880 F.2d 1152, 1155 (9th Cir. 1989).

[140] *See Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

[141] *See Id.*

21

Case No.: 12-cv-02333 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    analysis, the ALJ considered the claimant's RFC, age, education, and work experience in

2    conjunction with the GRIDS.[142]   He found that the GRIDS directed a finding of "not disabled."[143]

3           The Ninth Circuit recognizes that non-exertional limitations may make the GRIDS

4    inapplicable;[144] however, an ALJ is not precluded from referring to the GRIDS even if limitations

5    are non-exertional.[145]   Non-exertional limitations are non-strength related limitations that include

6    mental, postural, manipulative, sensory, or environmental limitations.[146]   The GRIDS may still be

7    used if non-exertional limitations do not significantly limit the range of work permitted by

8    exertional limitations.[147]   Only if non-exertional limitations are sufficiently severe so as to limit the

9    claimant's range of work is the ALJ required to take testimony of a vocational expert and identify

10   specific jobs within the claimant's capabilities.[148]

11          While Dixon alleges a substantial list of non-exertional limitations, the court is not

12   persuaded that these limitations are "sufficiently severe" so as to significantly limit her range of

13   work.  Dixon points to Stevenson's conclusions that she was moderately limited in the ability to

14   understand and remember detailed instructions, carry out detailed instructions, complete a normal

15   workday and workweek without interruptions from psychologically based symptoms, interact

16   appropriately with the general public, and respond appropriately to changes in the work setting.[149]

---

[142] *See* AR at 29.

[143] *See id.*

[144] *See id.* at 1101-02.

[145] *See Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986).

[146] *See Cooper*, 880 F.2d at 1155 n.7.

[147] *See Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983).

[148] *See Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

[149] *See* Docket No. 20 at 16-17.

22

Case No.: 12-cv-02333 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

However, "moderate" and "mild" limitations, by definition, are not severe.[150]  In addition, Stevenson concluded that, overall, "plaintiff would be capable of meeting the basic cognitive/emotional demands of simple/unskilled work on a competitive, sustained basis."[151]  As to the other limitations raised by Dixon, many were addressed and discredited by the ALJ due to the lack of objective evidence, as discussed above.  In response to her concerns about her postural limitations and lifting/carrying limitations, the ALJ considered these in determining Dixon's RFC value when he concluded that Dixon would be limited to a "sedentary" RFC with ordinary seizure precautions, such as no work at unprotected heights.[152]

Because the non-exertional limitations had little or no effect on the occupational base of unskilled work, and in light of the ALJ's conclusion that Dixon's non-exertional limitations were not sufficiently severe, the ALJ's reference to the GRIDS was appropriate to determine the availability of unskilled work in the national economy.

## IV.   CONCLUSION

Dixon's motion for summary judgment is DENIED and the Commissioner's cross-motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated:  May 6, 2013

_Paul S. Grewal_
PAUL S. GREWAL
United States Magistrate Judge

---

[150] *Landa v. Astrue*, 283 Fed. Appx. 556, 558 (9th Cir. 2008).

[151] *See* AR at 787.

[152] *See id.* at 27.

23

Case No.: 12-cv-02333 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT